Thomas E. Clifford
Attorney at Law
2nd Floor, Alexander Building, San Jose
P.O. Box 506514
Saipan, MP  96950
Tel. (670)235-8846
Fax (670)235-8848

Attorney for Defendant Dongbu Insurance Company, Ltd.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE
### NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JUNG SOON LEE (deceased), by SUNG YOUNG LEE, Personal Representative | Civil Action No. 05-0031 |
| Plaintiff, | |
| v. | **DEFENDANT DONGBU INSURANCE COMPANY, LTD.'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW** |
| DONG GUK CORPORATION, and DONGBU INSURANCE COMPANY, LTD. | |
| Defendants. | |

## MOTION

Defendant Dongbu Insurance Co., Ltd. ("Dongbu") hereby respectfully moves this Court to enter summary judgment in its favor pursuant to Federal Rule of Civil Procedure 56, and for such other and further relief to which Dongbu is entitled under law or in equity.

In support thereof, Dongbu submits the following memorandum of law and the accompanying declaration of Ms. Tamara L. Hunter, which are both incorporated herein by reference as if set forth in full.

# MEMORANDUM OF LAW

## I. Introduction.

This is a personal injury action in which Dongbu is named as a co-defendant with its insured, Defendant Dong Guk Corporation ("DGC").

Plaintiff Jung Soon Lee (deceased), by Sung Young Lee, personal representative ("Plaintiff") alleges that DGC served alcoholic beverages after hours to apparently intoxicated customers at DGC's restaurant, and that as a result, Jung Soon Lee was killed in automobile accident several hours later.

Pursuant to the stipulation of Plaintiff and DGC, a First Amended Complaint ("Amended Complaint") was filed in which Dongbu was named as a co-defendant with its insured, DGC, under the Commonwealth of the Northern Mariana Islands ("CNMI") direct action statute at 7 CMC § 7502(e).[1] No other claims are made against Dongbu besides the direct action claim. As such, Dongbu can only be liable to Plaintiff or to its insured, DGC, if there is coverage under the applicable policy for the claims brought in this lawsuit.

There is no coverage under the policy as a matter of law. The claims arise exclusively out of the serving of alcoholic beverages, and the applicable general liability insurance policy expressly excludes any claims in connection with the serving of alcoholic beverages (such exclusions are known as "dram shop" exclusions). Therefore, Dongbu is entitled to entry of judgment in its favor on Plaintiff's direct action claim against Dongbu, and on Dongbu's cross claim against DGC for a

---

[1] Prior to its amendment pursuant to P.L. 14-39, effective October 26, 2004 (the accident made the basis of this lawsuit is alleged to have occurred on August 2, 2004), the direct action statute allowed a plaintiff to file suit directly against a defendant's insurer, and provided that the insurer was liable to the plaintiff "within the terms and limits of the policy." 4 CMC § 7502(e).

declaration that there is no coverage under the policy.

**II. Facts.**

Since this is an insurance coverage matter, the undisputed facts can be broken down into two sets of facts: one summarizing the allegations in the complaint, and the other setting forth the relevant terms and conditions in the insurance policy.

First, the Amended Complaint *alleges*:

1. Paragraphs 1 through 4 of the Amended Complaint address jurisdiction, venue and the parties. Paragraph 5 incorporates by reference the preceding paragraphs.

2. DGC operates a restaurant in Chalan Kanoa known as Seafood House/Han Kuk Ban Jeon restaurant (the "restaurant") that serves alcoholic beverages. Amended Complaint, Paragraph 6. DGC is licensed to serve alcoholic beverages. Amended Complaint, Paragraph 12.

3. In the early morning hours of August 2, 2004, Jung Soon Lee, Gyu Jin Kim and other students (the "students") from the Northern Marianas College were at the restaurant as customers. Amended Complaint, Paragraphs 7-8.

4. DGC kept the restaurant open and served the students alcoholic beverages between 1:00 a.m. and 3:00 a.m. Amended Complaint, Paragraph 9.

5. DGC served the alcoholic beverages even though it knew that Gyu Jin Kim was visibly intoxicated. Amended Complaint, Paragraph 10.

6. Gyu Jin Kim later drove a vehicle in which Lee Jung Soon was his passenger, and a result of his intoxication, he was in an automobile accident in which Lee Jung Soon was tragically killed. Amended Complaint, Paragraph 11.

7. DGC served the customers in violation of 4 CMC § 5554 by serving alcoholic beverages

after 2:00 a.m.  Amended Complaint, Paragraph 13.

8.  DGC has a duty to stop serving alcoholic beverages by 2:00 a.m.  Amended Complaint, Paragraph 14.

9.  DGC has a duty to deny service of alcoholic beverages to apparently intoxicated customers. Amended Complaint, Paragraph 15.

10.  DGC has a duty to ensure that its customers are "safe in the premises."  Amended Complaint, Paragraph 16.

11.  DGC has a duty "not to create a dangerous condition" for its customers.  Amended Complaint, Paragraph 17.

12.  The police report indicates that Gyu Jin Kim operated the vehicle under the influence of alcohol.  Amended Complaint, Paragraph 18.

13.  Serving alcoholic beverages apparently intoxicated customers breaches the duty of care and violates 4 CMC § 5558.  Amended Complaint, Paragraph 19.

14.  Paragraph 20 of the Amended Complaint sums up how the foregoing facts violate the statutes and legal duties referenced above.

15.  Paragraphs 21-23 of the Amended Complaint set forth the direct action claim against Dongbu.

The foregoing are the only allegations in the Amended Complaint.  Notably, the original complaint did not contain any allegations regarding keeping customers "safe in the premises," or any reference to a duty "not to create a dangerous condition."  Instead, those two allegations (Amended Complaint, Paragraphs 16 and 17), were added in the Amended Complaint in an obvious effort to avoid the insurance policy's dram shop exclusion.  Tellingly, however, there are no allegations

anywhere of any allegedly dangerous condition or unsafe condition at the restaurant *other* than the alleged serving of alcoholic beverages (the legal significance of this is discussed below).

Second, the material facts regarding the applicable insurance policy are also undisputed.

1. Effective June 4, 2004, Dongbu issued a renewal of an insurance policy with named insureds DGC and Mr. Han, Kook Ban Jun ("Mr. Han"), and with policy No. KBO-00051-S01 (the "Policy"). The Policy term was from June 4, 2004 through June 3, 2005.  *See* Dongbu's February 21, 2007 First Amended Answer and Defenses to First Amended Complaint and Cross Claim, Paragraph 5 (hereinafter referenced as "Dongbu Cross Claim, Paragraph __"), *and* DGC's Answer to Cross-Claim, Paragraph 1 (hereinafter referenced as "DGC Answer, Paragraph ___"), admitting same.  *See also, generally,* a true and correct copy of the Policy, attached as Exhibit A to the Declaration of Ms. Tamara L. Hunter (the "Hunter Declaration"), which is filed together with this Motion.

2. The Policy is a valid, binding insurance contract between Dongbu, on the one hand, and DGC and Mr. Han, on the other hand.  *See* Dongbu Cross Claim, Paragraph 6 *and* DGC Answer, Paragraph 1, admitting same.

3. Dongbu is the insurer under the Policy.  *See* Dongbu Cross Claim, Paragraph 7 *and* DGC Answer, Paragraph 1, admitting same.

4. DGC and Mr. Han are the named insureds under the Policy.  *See* Dongbu Cross Claim, Paragraph 8 *and* DGC Answer, Paragraph 1, admitting same.

5. The Policy's declarations page, issued as part of the June 4, 2004 renewal, identifies the Policy as a "BUSINESSOWNERS POLICY."  *See* Dongbu Cross Claim, Paragraph 9 *and* DGC Answer, Paragraph 1, admitting same.

6. The schedule of the declarations page shows that there are two types of coverage provided.

As more particularly stated therein, one is property coverage and the other is liability coverage. *See* Dongbu Cross Claim, Paragraph 10 *and* DGC Answer, Paragraph 1, admitting same.

7. The Policy's comprehensive single limit for the liability coverage is $300,000. *See* Dongbu Cross Claim, Paragraph 11 *and* DGC Answer, Paragraph 1, admitting same.

8. The Policy is subject to all lawful terms and conditions in the Policy, including all amendments and endorsements. *See* Dongbu Cross Claim, Paragraph 12 (alleging subject to all terms and conditions) *and* DGC Answer, page 2, third full paragraph, admitting subject to all *lawful* claims.

9. The Policy has an exclusion that provides:

> **B. EXCLUSIONS**
>
> **1. Applicable to Business Liability Coverage.** This insurance does not apply to:
>
> c. "Bodily injury" or "property damage" for which any Insured may be held liable by reason of:
>
> 1) Causing or contributing to the intoxication of any person;
>
> 2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>
> 3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
>
> This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

*See* the Policy, page 23 (attached as Exhibit A to the Hunter Declaration).

All of the foregoing facts are undisputed, and they are the only facts material to this insurance coverage dispute.

### III. Legal standard

Summary judgment is appropriate where there are no material facts in dispute and the movant is entitled to judgment in its favor as a matter of law. Federal Rule of Civil Procedure 56(c). The purpose of summary judgment is to terminate unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is an integral component of the federal rules. *Id.* at 327.

Additionally, "[t]he construction of an insurance policy is a question of law for which summary judgment is particularly appropriate." *Property-Owners Ins. Co. v. Ted's Tavern, Inc.*, 853 N.E.2d 973, 977 (Ind.App. 2006), *citations omitted.*

### IV. The claims are specifically excluded by the dram shop exclusion

As set forth above, the Plaintiff claims in the Amended Complaint that DGC served alcoholic beverages: 1) after the statutorily established closing time; and 2) to apparently intoxicated customers. Plaintiff alleges that these actions violated: 1) 4 CMC §5554 (closing time); 2) 4 CMC §5558 (serving apparently intoxicated customers); and 3) the common law standard of care (*i.e.* negligence). Amended Complaint, Paragraphs 13-20.

The Policy does not apply to any personal injury claim against DGC where DGC would be liable by reason of:

    1. Contributing to the intoxication of any person;

    2. The furnishing of alcoholic beverages to a person under the influence of alcohol; or

    3. Any statute relating to the sale of alcoholic beverages.

The Policy, page 23, B. Exclusions, 1(c)(1-3).

The exclusions squarely exclude the claims. Plaintiff claims DGC contributed to the intoxication of the customers and served apparently intoxicated persons. Those claims are excluded by

1(c)(1) and (2).   Plaintiff claims DGC violated CNMI statutory provisions regarding the sale of alcoholic beverages.  Those claims are excluded by 1(c)(3).  Plaintiff claims that the way DGC served the alcoholic beverages breached its common law duty of care, caused the premises to be unsafe and created a dangerous condition.  Those claims are all made *only* by reason of DGC having contributed to the intoxication of its customers and giving them more drinks when they were apparently intoxicated. Those claims are excluded by 1(c)(1) and (2).

    The Policy's exclusion, however, only applies if DGC is in "the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages."  The Policy, page 23, B. Exclusions, 1(c).  That fact is also clearly alleged.  Plaintiff alleges that DGC was a restaurant licensed to sell alcoholic beverages.  Amended Complaint, Paragraphs 6 (restaurant) and 12 (licensed to sell alcoholic beverages).

    The analysis should end here.  Taking the allegations at face value, the exclusion clearly applies under its plain and ordinary meaning.  *Ito v. Macro Energy*, 4 N.M.I. 46, 68 (1993)(just because terms are not defined does not mean that they are ambiguous; terms in an insurance policy will be afforded their plain and obvious meaning).  Another court put it this way:

> [A]n insurance policy that is unambiguous must be enforced according to its terms, even those terms that limit an insurer's liability.  Thus, we may not extend insurance coverage beyond that provided by the unambiguous language in the contract.  Moreover, insurers have the right to limit their coverage of risks and, therefore, their liability by imposing exceptions, conditions, and exclusions. However, to be enforced, these limitations must be clearly expressed and must be consistent with public policy.

> *Ted's Tavern, Inc.*, 853 N.E.2d at 978, *citation omitted.*

    Regardless, there has been extensive litigation regarding the precise language in the Policy, and courts have roundly upheld the exclusion.

1
2
3
4
5
6
7

An insured will sometimes claim that it is not in the "business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages" if liquor sales is only a small part of its business, or incidental to its operations. Court have repeatedly rejected that idea. *See for example Peerless Ins. Co. v. Disla*, 999 F.Supp. 261 (D.Conn. 1998); *Woodall v. Alfa Mut. Ins. Co.*, 658 So.2d 369 (Alabama 1995); *U.S. Fidelity and Guar. Co. v. Country Club of Johnston County, Inc.*, 458 S.E.2d 734 (N.C. App. 1995); *and see also* 9A Couch on Insurance (3rd Ed. 1996), § 129:32.

8
9
10
11
12
13
14
15

Another approach is that an underlying tort plaintiff will allege that its claims are based in part on negligent hiring, training and supervising of employees. *See for example Ted's Tavern, Inc.*, 853 N.E.2d at 977. This is similar to what the Plaintiff and DGC have done in this case. On a stipulated motion, Plaintiff amended the complaint to allege DGC failed to keep the customers "safe in the premises" and breached its duty "not to create a dangerous condition." Amended Complaint, Paragraphs 16 and 17. However, there is no allegation of anything unsafe or dangerous other than the way DGC is alleged to have served alcoholic beverages. As the *Ted's Tavern* court held:

16
17
18
19
20
21
22
23
24
25
26

> Regardless of the theories of liability a resourceful attorney may fashion from the circumstances of this case, the allegations within Counts II and IV are general "rephrasings" of the core negligence claim for causing/contributing to Wickliff's drunk driving. See *Wright*, 765 N.E.2d at 695 (quoting *Northbrook Prop. & Cas. Co. v. Transp. Jt. Agreement*, 194 Ill.2d 96, 251 Ill.Dec. 659, 741 N.E.2d 253, 254 (Ill.2000)). The events outlined in Counts II and IV simply are not wholly independent of "carelessly and negligently" serving and continuing to serve alcoholic beverages to Wickliff when the defendants knew or should have known he was intoxicated and soon thereafter could be driving drunk. To the contrary, the nuisance and the negligent hiring, training, and supervision are so inextricably intertwined with the underlying negligence that there is no independent act that would avoid exclusion 2(c). [footnote omitted] Hence, while a valiant effort to procure coverage, the creative pleading of Counts II and IV cannot hide the reality that the immediate and efficient cause of the injuries was drunk driving precipitated by the negligent service of alcohol. As such, exclusion 2(c) precludes coverage. Sadly, tragedies resulting from the over-service of alcohol remain an all-too-frequent occurrence for our citizens. [footnote omitted] While we recognize the horrible loss suffered here, we are not at liberty to extend insurance coverage beyond that provided by the unambiguous language in the Policy.

*Id.* at 983.

*See also Cusenbary v. United States Fidelity and Guar. Co.*, 37 P.3d 67 (Montana 2001); *and Auto Owners (Mut.) Ins. Co. v. Sugar Creek Memorial Post No. 3976.* 123 S.W.3d 183 (Mo.App. 2003).

The dram shop exclusion bars coverage in this case under its plain and ordinary meaning. The precise language in the Policy has been litigated extensively, and there is a wealth of authority and commentary upholding the exclusion.

## V. Conclusion

The dram shop exclusion applies squarely and unambiguously to the claims in this case. Dongbu is entitled to summary judgment in its favor on both the Plaintiff's direct action claim against Dongbu and on Dongbu's cross claim against its insured, DGC, for a declaratory judgment that there is no coverage under the Policy.

Wherefore, Dongbu respectfully moves the Court to enter summary judgment in its favor, and to grant it such other and further relief to which Dongbu is entitled under law or in equity.

Respectfully submitted this 20th day of March, 2007:

Thomas E. Clifford
Counsel for Defendant/Cross Claimant
Dongbu Insurance Company, Ltd.